Captain Marvin E. Scothorn is appealing from the decision of the Montgomery County Court of Common Pleas affirming the decision of the Miami Township Board of Trustees finding Captain Scothorn guilty of five of six charges which had been made against him in his capacity as a member of the Miami Township Police Department and terminating his employment therein.
At the request of the Miami Township Board of Trustees, the Montgomery County Sheriff's Office conducted an investigation of the Miami Township Police Department based on allegations made to the Trustees in 1995. The sheriff's department conducted a number of interviews, including one of Captain Scothorn, and following an investigation, a report was delivered by the sheriff's department to the Township Trustees. The report considered allegations which had been made against Captain Scothorn in his capacity as an officer of the Miami Township Police Department and other officials or members of the department. After reviewing the investigation, the Miami Township Board of Trustees officially notified Captain Scothorn by letter dated April 15, 1996, that he had been charged with six violations which would be taken up by the Board at a hearing to which he was ordered to attend, with counsel if he desired. The portions of that letter relevant to the purpose of this appeal are as follows:
You are hereby charged with:
 1. lying to the investigating officers regarding the incident involving an employee, Elizabeth Reboulet, in violation of Miami Township Police Department Rules 102, Conduct Unbecoming an Officer, Rule 110, Insubordination, and Rule 136, Truthfulness;
 2. it is alleged that you have misused the LEADS terminal in violation of Miami Township Police Department Rules 104; Conformance of Laws, and 106 Neglect of Duty;
 3. it is alleged that you have misused the Township computer for your Mustang registry and for obtaining information via the LEADS terminal for personal business in violation of Miami Township Police Department Rules 106, Neglect of Duty, and 133, Use of Department Equipment;
 4. it is alleged that you committed improper conduct by viewing the video of a nude, masturbating female while at the Township and on duty in violation of Miami Township Police Department Rules 106, Neglect of Duty, and 102, Conduct Unbecoming a Police Officer; and
 5. it is alleged that you were untruthful regarding a pistol that you indicated that you found inside a police car in violation of Miami Township Police Department Rules 102, Conduct Unbecoming an Officer, 106, Neglect of Duty, 110 Insubordination, and 136, Truthfulness.
 6. it is alleged that you were untruthful in denying that you took a stereo from the police property room, intending to keep it for your own use, in violation of Miami Township Police Department Rules 110, Insubordination, and 136, Truthfulness.
The hearing before the Miami Township Board of Trustees was subsequently held on April 25, 1996. Captain Scothorn was present, represented by counsel, and the Board of Trustees of Miami Township was represented by the Montgomery County Prosecutor's Office. A total of twelve witnesses, including Captain Scothorn, testified at the hearing and were examined and cross-examined by the respective counsel. At the beginning of the hearing, Captain Scothorn, through his counsel, stated as to allegation number 2 in the trustee's letter, "We're just going to stipulate that one, it's not contested." (Tr. 8 — 9).
After reviewing the evidence obtained at the hearing, the Miami Township Board of Trustees adopted resolution number 56-96 on May 1, 1996, in which the Board terminated Captain Scothorn from his position on the Miami Township Police Department, effective immediately, after making the following findings:
 Whereas, after due consideration of the testimony and evidence, the Board of Trustees finds that:
 1. as to the first charge set forth in the April 15, 1996 letter, that Captain Scothorn did violate the Department's Rules 102, 110 and 136 and was untruthful to the investigating officers regarding the shackling of a Township employee, Elizabeth Reboulet, knowing it to be true;
 2. as to the second charge set forth in the April 15, 1996 letter, that Captain Scothorn did violate Department Rules 104 and 106 in misusing the LEADS terminal;
 3. as to the third charge set forth in the April 15, 1996 letter, that Captain Scothorn did violate Department Rule 106 and 133 for misusing the Township computer for his personal Mustang registry and for obtaining information for that registry through the LEADS terminal;
 4. as to the fourth charge set forth in the April 15, 1996 letter, that Captain Scothorn did violate Department Rules 106 and 102 in viewing a video of a nude, masturbating female while in the Township police building classroom and while on duty;
 5. as to the fifth charge set forth in the April 15, 1996 letter, that Captain Scothorn did violate Department Rules 102, 106, 110 and 136 pertaining to the incident where a pistol that he had found was not turned in to the police property room and that Captain Scothorn was untruthful to the Sheriff's investigator in denying said allegation while knowing it to be true;
 6. as to the sixth charge set forth in the April 15, 1996 letter, Captain Scothorn's guilt was not proven, and the Trustees dismiss said allegation and find that there was no violation of Township police policy.
 It is further noted that regarding the second allegation of the misuse of the LEADS terminal that Captain Scothorn, by and through counsel, entered a "no contest" plea at the time of the hearing and that the Trustees have specifically made a finding that Captain Scothorn did misuse the LEADS terminal in violation of Township policies and the Ohio Revised Code and the Ohio Administrative Code as it pertains to the misuse of a LEADS terminal; and further that Mrs. Omietanski abstained from voting on the finding of misuse made by the Board of Trustees on the 1st day of May, 1996.
 Therefore Be It Resolved, that the Board of Trustees of Miami Township finds that Captain Marvin E. Scothorn violated Miami Township Police Department police policies as it pertains to the allegations set forth in charges 1, 2, 3, 4 and 5 as set forth in the April 15, 1996 letter and is guilty of misfeasance, malfeasance, nonfeasance, misconduct in office, neglect of duty, and failure to obey orders given to him by the proper authority.
 And Be It Further Resolved, that the finding of guilty of the above charges necessitates that the Board of Trustees consider all relevant facts and circumstances regarding the employment of Captain Marvin E. Scothorn with the Miami Township Police Department (further, be it known that the Board of Trustees did not consider the opinion of Craig Heintz as to the result of Captain Scothorn's polygraph test. The Trustees did consider the questions and his answers and the personal observation of Mr. Heintz, but not his conclusion as to the veracity of Captain Scothorn's testimony.), and
 It Is Hereby Resolved, that the Board of Trustees of Miami Township hereby remove Captain Marvin E. Scothorn from his position on the Miami Township Police Department, effective immediately.
Captain Scothorn filed a timely notice of appeal to the Common Pleas Court of Montgomery County which, on March 31, 1997, issued a decision affirming the decision of the Miami Township Trustees, portions of which will be hereinafter quoted during our analysis of the issues on appeal.
Captain Scothorn brings to us the following six assignments of error:
 I. THE TRIAL COURT ERRED IN FINDING THAT THE TRUSTEES' DECISION THAT APPELLANT LIED CONCERNING THE REBOULET INCIDENT WAS SUPPORTED BY A PREPONDERANCE OF SUBSTANTIAL, RELIABLE AND PROBATIVE EVIDENCE AND WAS REASONABLE.
 II. THE TRIAL COURT ERRED IN FINDING THAT THE TRUSTEES' DECISION THAT APPELLANT MISUSED THE TOWNSHIP COMPUTER BY MAINTAINING HIS MUSTANG REGISTRY WAS SUPPORTED BY A PREPONDERANCE OF SUBSTANTIAL, RELIABLE AND PROBATIVE EVIDENCE AND WAS REASONABLE.
 III. THE TRIAL COURT ERRED IN FINDING THAT THE TRUSTEES' DECISION THAT APPELLANT VIOLATED SPECIFIED RULES BY VIEWING A PARTICULAR VIDEO TAPE DID NOT VIOLATE APPELLANT'S RIGHT TO DUE PROCESS BY IMPOSING RETROACTIVE APPLICATION OF ADMINISTRATIVE RULES.
 IV. THE TRIAL COURT ERRED IN FINDING THAT THE TRUSTEE'S DECISION THAT APPELLANT WAS UNTRUTHFUL ABOUT A CERTAIN PISTOL WAS SUPPORTED BY A PREPONDERANCE OF SUBSTANTIAL, RELIABLE AND PROBATIVE EVIDENCE AND WAS REASONABLE.
 V. THE TRIAL COURT ERRED IN FINDING THAT APPELLANT'S DISCHARGE WAS REASONABLE AND SUPPORTED BY A PREPONDERANCE OF SUBSTANTIAL, RELIABLE AND PROBATIVE EVIDENCE.
 VI. THE TRIAL COURT APPLIED AN INCORRECT STANDARD OF REVIEW IN ITS CONSIDERATION OF THIS CASE.
We must of necessity deal with assignment of error number VI first because if we sustain it, it would render the rest of the assignments moot in the case and it would have to be reversed and remanded. The gravamen of Scothorn's argument in this assignment is that the trial court did not independently appraise the evidence before it and simply deferred to the judgment of the Trustees. We find that this assignment lacks merit. The trial court, the Honorable John P. Petzold, in his decision, discussed its standard of review, as follows:
 Standard of Review A trial court in an administrative appeal must review decisions on appeal to "examine the `substantial, reliable, and probative evidence on the whole record'" as is required by R.C. § 2506.04. Dudukovich v. Lorain Metropolitan Housing Authority (1979), 58 Ohio St.2d 202, 207. The court must weight [sic] the evidence based on the hearing, relying on the transcripts from that hearing, and decide whether the administrative body's decision is supported by a preponderance of the substantial, reliable, and probative evidence. Id. The Trustees' findings must be given due deference even if based on conflicting evidence. University of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108, 111. If the conflicting evidence is of equal weight, this Court should defer to the Trustees as they had the opportunity to observe the demeanor of witnesses and weigh their credibility. Id. at 111.
It is evident both from the statement of the trial court, quoted above, and from the court's review of each claimed error brought to it by Scothorn, which will be quoted later, that the trial court did indeed examine the transcript, appraised the evidence as it is required to do, and gave deference to the Trustees' decision where it was supported by, as found by the court, a "preponderance of substantial, reliable and probative evidence on the whole record". Rev. Code § 2506.04. We find nothing in the trial court's decision indicating that it blindly followed the determination of the Board of Trustees. Rather, we find that it carefully and thoughtfully examined the evidence before it, including the transcript of the hearing, as well as all exhibits accepted during the hearing, and made its own conclusion as to the findings of the Trustees being supported by the necessary quantum and weight of the evidence.
The assignment of error number VI is overruled.
Before we review the remaining assignments of error, it is necessary to note our own standard of review upon appeal of a Court of Common Pleas review of an administrative order. We set forth our standard in Madison Township Board of Trustees v.Donohoo (Oct. 12, 1994), Montgomery App. No. 14007, unreported, as follows:
 This assignment requires a determination of our standard of review upon appeal of a court of common pleas' review of an administrative order. R.C. 2506.04
states that the court of common pleas' judgment "may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505 of the Revised Code." R.C. 2506.04. The Supreme Court interpreted the statute to say:
 An appeal to the court of appeals, pursuant to R.C. 2506.04, is more limited in scope and requires that court to affirm the common pleas court, unless the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence.
 Kisil v. City of Sandusky (1984), 12 Ohio St.3d 30, 34. The Court elaborated on the above language:
 This statute gives the common pleas court power to weigh the evidence, and to reach a decision reversing the board where the board's decision is not supported by "the preponderance of substantial, reliable and probative evidence." This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on "questions of law," which does not include the same extensive power to weigh "the preponderance of substantial, reliable and probative evidence," as is granted to the common pleas court. Within the ambit of "questions of law" for appellate court review would be abuse of discretion by the common pleas court.
 Id. at 34, fn. 4. Accord Borgerding v. City of Dayton
(1993), 91 Ohio App.3d 96, 101. Therefore, we must determine, as a matter of law, whether there is a preponderance of substantial, reliable and probative evidence in the record to support the lower court's reversal.
Our power of review, therefore, is more limited than that of the Court of Common Pleas. This court does not have the power to weigh the evidence as does the trial court, but is limited to review of the trial court's decision on the basis of finding an error in it "as a matter of law," which would be equivalent to finding an abuse of discretion by the trial court. From another point of view, we find that the difference here is analogous to the difference between our ability to review a decision against the manifest weight of the evidence, in contrast to reviewing a decision where the evidence was insufficient to support a conviction. In a criminal case, in reviewing a sufficiency of evidence argument, we must merely examine whether there was evidence admitted which, if believed, would support a verdict. In analyzing the weight of the evidence, however, we can assess, to a limited degree, the credibility of the evidence presented. Statev. Hufnagel (Sept. 6, 1996), Montgomery App. No. 15563, unreported. In an analogous sense, in reviewing a decision of an administrative agency or, in this case, the Miami Township Board of Trustees, we do not weigh the evidence as the trial court does, but rather we review whether there exists evidence in the record that would support the decision of the trial court.
We turn now to the merits of the first five assignments of error.
 I. THE TRIAL COURT ERRED IN FINDING THAT THE TRUSTEES' DECISION THAT APPELLANT LIED CONCERNING THE REBOULET INCIDENT WAS SUPPORTED BY A PREPONDERANCE OF SUBSTANTIAL, RELIABLE AND PROBATIVE EVIDENCE AND WAS REASONABLE.
This error is identical to the first assignment of error to the trial court when it reviewed the Trustees' decision, which the trial court dealt with as follows:
 During the first administrative interview, the investigators asked Scothorn if he had ever put leg restraints on Elizabeth Reboulet, and he said `no.' Scothorn claims that he discussed this matter with Lieutenant Swihart, who told Scothorn that in fact Scothorn and Lt. Swihart acting together had put leg restraints on Reboulet. During a polygraph test, he changed his position to say that he did not deny it but could not recall it, and he maintained that same position at the hearing.
 The real issue here was whether Scothorn knowingly lied to the investigators at that first meeting in saying that this event never occurred. This Court, in reviewing the Trustees' decision, must determine whether the requisite quantum of evidence is present which supports the Trustees' decision by a preponderance of reliable, probative and substantial evidence and as a reasonable decision. University of Cincinnati v. Conrad
(1980), 63 Ohio St.2d 108. Only Scothorn knows with absolute certainty what his knowledge of the Reboulet incident was when he was first questioned about it on February 20, 1996. However, this does not mean that the Trustees must accept what he testified to as true. The Trustees were in a position to observe Scothorn's demeanor during his testimony on this matter. There is sufficient evidence given about the Reboulet incident, i.e., it was only approximately two years that had passed at the time of the interview, leg-shackling a fellow police officer is such an odd and unusual event, and Scothorn's memory is relatively good concerning all of the other incidents investigated, to create a preponderance of substantial, reliable and probative evidence to support the Trustees finding that he lied during that February 20, 1996, interview, even in light of Scothorn's testimony. Furthermore, the Trustees made a reasonable decision and therefore this Court finds the Appellant's first assignment of error lacking merit.
We find no error in the assessment of the trial court's decision on this first assignment of error. There is certainly ample testimony in the record with regard to the incident. See especially, Tr. 61 — 92. Captain Scothorn's own testimony at Tr. 267 — 268 could readily have been viewed by the Trustees as evasive. We find no error "as a matter of law" in the trial court's decision, and the first assignment of error is, therefore, overruled.
 II. THE TRIAL COURT ERRED IN FINDING THAT THE TRUSTEES' DECISION THAT APPELLANT MISUSED THE TOWNSHIP COMPUTER BY MAINTAINING HIS MUSTANG REGISTRY WAS SUPPORTED BY A PREPONDERANCE OF SUBSTANTIAL, RELIABLE AND PROBATIVE EVIDENCE AND WAS REASONABLE.
This assignment was also assignment number II presented to the trial court, which dealt with it thoroughly as follows:
 The facts relating to this assignment of error are not in dispute. Scothorn fully admits that he used the computer for his registry. Scothorn's [sic] argues that there was never a direct order or decision that use of the computer for personal hobbies was against the "intended purpose" as provided by Department Rule 133 ("Use of Department Equipment [sic]). This Court finds that this defense is inadequate especially as it is being made by a Captain of the Police Department. Department Rule 133 is written broadly so that there is no need for specific orders about the proper uses of each piece of Department equipment. Also, it is undisputed that at least one of the computers Scothorn used for his Mustang registry was owned by the Department during his personal use of the computer. Thus, this issue really becomes one of interpretation of a rule, and the question is `whether a one's personal hobbies are withing [sic] the "intended purpose" of the equipment according to Department Rule 133.'
 A computer was first purchased in or around 1985. This computer was funded through the Police Association, as the Township did not budget for it, for various Association and Department Projects including an accreditation project. Later, after the Association's computer crashed, the Township bought a computer to replace the Association's computer and this computer was to be used for Department Projects only. Both James Codispoti, who was the first primary user of this Township-Department computer, and Scothorn testified that Scothorn used the Department computer for maintaining his Mustang registry which was a personal hobby affiliated in no way to his employment with the Township.
 In an R.C. § 2506 case, such as the present case, the trial court is limited to a determination of whether the decision being appealed is supported by a preponderance of substantial, reliable, and probative evidence and is reasonable. Roseman v. Reminderville
(1984), 14 Ohio App.3d 124. The Trustees' interpretation of Department Rule 133, finding that the personal use of the computer bought by the Township is against its intended purpose, is a reasonable determination. The evidence that establishes the Department's purchase and continuing ownership of the computer are undisputed. Therefore, the Trustees's decision that the [sic] Scothorn misused the township computer is supported by a preponderance of substantial, reliable and probative evidence and is reasonable. Accordingly, this Court finds Appellant's second assignment of error lacks merit.
As in the first assignment of error, we find no error on the part of the trial court in its assessment of the second assignment of error, identical to the one presented to us. It is evident that the trial court carefully reviewed the transcript and exhibits and came to a reasonable conclusion.
The second assignment of error is overruled.
 III. THE TRIAL COURT ERRED IN FINDING THAT THE TRUSTEES' DECISION THAT APPELLANT VIOLATED SPECIFIED RULES BY VIEWING A PARTICULAR VIDEO TAPE DID NOT VIOLATE APPELLANT'S RIGHT TO DUE PROCESS BY IMPOSING RETROACTIVE APPLICATION OF ADMINISTRATIVE RULES.
The trial court dealt with this assignment of error as follows:
 Chapter 2505 of the Ohio Revised Code governs the procedures to be followed during appeals, including administrative appeals. An appeal is defined as "all proceedings in which a court reviews . . . a cause determined by . . . an administrative board." R.C. § 2505.01(A)(1). This due process "cause" cannot be reviewed by this Court because the Trustees never determined whether there was a due process violation as Scothorn never raised it as a defense before the appeal. Thus, there is no due process "cause" to be reviewed. In addition, Resolution No. 56-96 (which sets forth the Trustees' findings) establishes that Scothorn's behavior was also considered under R.C. § 505.491 (effective no later than 8-9-74). Therefore, Scothorn's due process claim being untimely and irrelevant in light of R.C. § 505.491, this Court finds Appellant's third assignment of error lacks merit.
Upon an exhaustive review of the record and transcript, we find that the decision of the trial court in this assignment of error is supported by the evidence. Again, the facts relating to this assignment of error are not in dispute. Captain Scothorn admitted that he viewed the videotape for perhaps ten minutes because of his "personal curiosity." (Tr. 227). Furthermore, this incident occurred either in 1990 or 1991 when Scothorn was a captain (Tr. 256) and acted as kind of an assistant chief "in charge of internal affairs" among other things. (Tr. 257). Although Captain Scothorn was not alone in viewing the videotape of an unclothed female participating in a lewd demonstration (Tr. 31-32), it was viewed during on-duty time in the police department's office and while Captain Scothorn was in charge of internal matters. Clearly, it was conduct unbecoming an officer for all of the policemen involved, but particularly so for Captain Scothorn who was in a supervisory position at the time. When asked during the hearing whether it had occurred to him that this was an improper use of township time and equipment, Captain Scothorn replied, "It does now." As we have stated before, "law enforcement officers are expected to conform to a higher standard of conduct than the general public." Donohoo, supra, at 7.
We find no error in the trial court's disposition of this third assignment of error and as the same is presented to us, it is overruled.
 IV. THE TRIAL COURT ERRED IN FINDING THAT THE TRUSTEE'S DECISION THAT APPELLANT WAS UNTRUTHFUL ABOUT A CERTAIN PISTOL WAS SUPPORTED BY A PREPONDERANCE OF SUBSTANTIAL, RELIABLE AND PROBATIVE EVIDENCE AND WAS REASONABLE.
The trial court responded to this assignment as follows:
 One of the Township's witnesses, Patrolman Unger, testified that on two separate occasions, he overheard Scothorn discussing a gun that he (Scothorn) had found in his car. In addition, he witnessed Scothorn holding the gun during one of these conversations in the locker room. Unger, while testifying that he only briefly saw the gun, was able to discern it as a small gun and likely to be a semiautomatic, small caliber weapon.
 The real issue here, as with the Reboulet incident, was whether Scothorn knowingly lied to the investigators in maintaining that he had no knowledge of any such gun. This Court, in reviewing the Trustees' decision, must determine whether the requisite quantum of evidence is present which supports the Trustees' decision by a preponderance of reliable, probative and substantial evidence and as a reasonable decision. University of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108. Further, this Court should defer to the Trustees where there is conflicting evidence of equal weight because the Trustees had the opportunity to observe the demeanor of witnesses and weigh their credibility. Id. at 111. Unger's testimony gave the Trustees reliable, probative and substantial evidence contradicted only by Scothorn's brief testimony on the matter, which was that the incident never happened. This court must give deference to the Trustees' decision as the conflicting testimony is of equal weight and the Trustees were able to observe the witnesses during their testimony and assess their credibility. This Court finds the Trustees' decision to be reasonable and therefore finds Appellant's fourth assignment of error lacks merit.
Here again, without weighing the evidence, we find that there was substantial, probative evidence in the record which would support the decision of the trial court. Patrolman Unger gave clear and sufficient testimony which, if believed by the Trustees, (evidently they did), would support the Trustees' decision. (Tr. 12-27). Unger's testimony was fairly precise while Scothorn's denials (Tr. 270-274) were again weakened by his statement that he simply didn't remember. (Tr. 292). While we find that the evidence behind this charge to be perhaps the least substantial of the four charges reviewed in this appeal, we cannot find that the trial court's decision was unsupported by the evidence "as a matter of law." While this court might have made a different determination than the Trustees based upon the evidence presented, that is not our job. The Trustees' decision, as well as the decision of the trial court, certainly had sufficient probative evidence behind it, and we cannot find any error on the part of either the Trustees or the trial court on this issue.
The fourth assignment of error is overruled.
 V. THE TRIAL COURT ERRED IN FINDING THAT APPELLANT'S DISCHARGE WAS REASONABLE AND SUPPORTED BY A PREPONDERANCE OF SUBSTANTIAL, RELIABLE AND PROBATIVE EVIDENCE.
The trial court summarily, but we deem properly, dealt with this fifth assignment of error as follows:
 All of the charges that Scothorn was found guilty of (Resolution 56-96) were found to be in violation of R.C. § 505.491 in addition to the specific Department Rules for each charge. Pursuant to § 505.491, the Trustees filed written charges against Scothorn (the April 15th letter) including a statement of each allegation. The Trustees held a hearing of these charges in compliance with § 505.492 on April 25, 1996. Because of the Trustees' adherence to § 505.49 and the procedures required for removal of the Appellant as set forth in §§ 505.491 to 505.495 and this Court's decision to affirm the Trustees' decision, the Trustees' decision to discharge Scothorn is supported by a preponderance of substantial, reliable and probative evidence and is deemed reasonable. Therefore, this Court finds the Appellant's fifth assignment of error to lack merit.
Captain Scothorn argues in his brief that the decision of discharge is excessive and unsupported by the evidence in view of his twenty-six year history with the Miami Township Police Department, and that there was no evidence of prior disciplinary problems before the charges brought against him in this case. We find, however, that the trial court did not abuse its discretion in affirming the Trustees' decision to discharge Captain Scothorn, and we can find no error "as a matter of law" in the court's decision. The underlying reasons for the Trustees' decision are aptly stated in the following excerpt from the appellee's brief (page 19), which we adopt as our own:
 The Board of Trustees should have available to them the right to choose the type of individual that it places in such a high position of public trust to run its police department. The question of the character of Captain Scothorn by review of the charges and the evidence presented against him lead only to the conclusion that the Trustees did not abuse their discretion in terminating Captain Scothorn from the Department. The evidence is clear that Scothorn is guilty of misfeasance, malfeasance, nonfeasance, misconduct in office, neglect of duty, gross immorality and failure to obey the orders given by the Trustees and Administrator in violation of O.R.C. § 505.491. Their decision was based on reason and was not one which is subject to question as being clearly wrong. Certainly, an abuse of discretion is more than just an error in judgment, and when the evidence is overwhelming, as it is in this case, the Board of Trustees must be given the latitude to hire honorable people to run their police department in a manner which will bring respect and credibility to the police department.
For all the foregoing reasons, we find that the fifth assignment of error is without merit also, and the judgment is affirmed.
FAIN, J. and GRADY, J., concur.
Copies mailed to:
Michael Russell
Victor A. Hodge
Hon. John P. Petzold